IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EDWARD LEE BUSBY, | § | |
|     *Petitioner,* | § | |
| | § | |
| V. | § | |
| | § | Civil Action No. 4:09-CV-160-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     *Respondent.* | § | |

**ORDER DENYING APPLICATION FOR FUNDS**

On September 9, 2011, Edward Lee Busby ("Petitioner") filed an *Application to Obtain the Reasonably Necessary Services of a Psychiatrist with Expertise in Neuropharmacology* (doc. 49). Rick Thaler ("Respondent") opposes the application on the grounds that Petitioner seeks to fund a meritless and procedurally barred claim (doc. 51). The Court will deny the request for funds.

**I. Applicable Law**

A district court may authorize expenditures for investigative or expert services that the court finds to be "reasonably necessary." *See* 18 U.S.C. § 3599(f). For requests that exceed $7,500, Petitioner must further show that the excess funding is "necessary to provide fair compensation for services of an unusual character or duration" and receive approval from the chief judge of the circuit. *See* 18 U.S.C. § 3599(g)(2). A district court does not abuse its discretion in denying funding when a petitioner has "(a) failed to supplement his funding request with a viable

constitutional claim that is not procedurally barred, or (b) when the sought-after assistance would only support a meritless claim, or (c) when the sought-after assistance would only supplement prior evidence." *Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009) (discussing predecessor statute) (citations omitted).

## II.  Exhaustion

Petitioner requests $8,000 to retain the services of a psychiatric expert who specializes in neuropharmacology in order to develop his claim that trial counsel's sentencing investigation was constitutionally deficient (claim 1a).  Petitioner acknowledges that the ineffective-assistance-of-trial-counsel ("IAC") claim is unexhausted because it was withdrawn by state habeas counsel. *Application*, p. 4.  Respondent argues that the claim is therefore procedurally barred under *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Petitioner contends the claim is procedurally viable, however, because the lack of exhaustion was due to "multiple undisclosed conflicts of interest under which [Petitioner's] appointed state habeas counsel labored." *Application*, p. 4.  Petitioner makes three separate arguments for excusing the procedural default: (1) the state corrective process was ineffective to protect his rights to effective assistance of counsel at trial;[1] (2) the conflicts of

---

[1]This contention, which the Court assumes is based on 28 U.S.C § 2254(b)(1)(B)(ii), is unbriefed, and the Court will not address it.  *See* N.D. Loc. R. 7.1(d).

interest are factors external to the defense that caused the procedural default; (3) the conflicts of interest violated his constitutional right to effective assistance of first post-conviction counsel, if the Supreme Court recognizes such a right in two pending cases, *Martinez v. Ryan*, No. 10-1001 and *Maples v. Thomas*, No. 10-63. *Application*, p. 15-17.

As Petitioner acknowledges, allegations that state habeas counsel acted under a conflict of interest do not excuse procedural default. *See Application*, p. 17; *Williams v. Thaler*, 602 F.3d 291, 308-309 (5th Cir. 2010) (rejecting claim that procedural default should be excused because petitioner's state habeas counsel was married to an assistant district attorney). This is because there is no constitutional right to counsel in state post-conviction habeas-corpus proceedings. *See id.; Coleman*, 501 U.S. at 752.

Petitioner, therefore, asks the Court to hold his funding request until the Supreme Court issues its opinions in *Martinez* and *Maples*. The Court declines to do so because, assuming those opinions ultimately excuse procedural default due to state habeas counsel's acting under a conflict of interest, Petitioner does not show that such a conflict caused the procedural default in this case. In fact, Petitioner attempts to demonstrate that there is no other explanation for the procedural default only by omitting the explanatory evidence in the record that would undermine his claim.

## Conflict-of-Interest Allegations

To demonstrate a conflict of interest in this case, Petitioner first notes that the penalty for counsel's being found ineffective in a capital case in Texas is ineligibility for future appointments as lead counsel in capital cases. *See* Tex. Code Crim. Proc. Ann. art. 26.052(d)(2)(C) (West 2011). Petitioner then notes that state habeas counsel and trial counsel in this case (1) were appellate counsel and state habeas counsel, respectively, in another, unrelated death penalty case, and (2) were appointed co-counsel in a third, unrelated federal death-penalty proceeding. *Application*, p. 4-6. Petitioner's premise is that these professional relationships, which either required one attorney to investigate the work of the other and vice versa or required both attorneys to work together for one client, intruded on their professional judgment through "mutually assured professional destruction." *Application*, p. 13; Tex. Disciplinary R. Prof'l Conduct 1.06(b)(2) (conflict based on lawyer's own interests or his responsibility to a third person).[2]

---

[2] Petitioner provides no legal authority for the proposition that counsel cannot associate with each other or take positions adverse to each other on unrelated matters. He instead proffers the advocacy and argument of a legal ethics expert with no stated qualifications in Texas habeas law or death penalty litigation. *Application*, Ex. 2, p. 2-4 (declaration of L. Fox). The lack of qualifications aside, expert testimony on a legal question invades the province of the court, is irrelevant, and is not admissible. *See Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 197-98 (5th Cir. 1996); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Heishman v. Ayers*, 621 F.3d 1030, 1042 (9th Cir. 2010); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992).

Petitioner points out that his state habeas counsel sent a letter to the Texas Court of Criminal Appeals (CCA) withdrawing the IAC allegation after the trial court had already recommended denial of the claim. *Application*, p. 9. Petitioner further contends that the trial court inexplicably received a copy of the withdrawal letter and *sua sponte* issued supplemental findings withdrawing the claim based on state habeas counsel's conclusion that the mitigation investigation was adequate. *Application*, p. 9-10; (SHR Supp. 2-3). The argument here is that habeas counsel's own conclusion was at odds with the conclusion of his mitigation investigator, Ms. Toni Knox, and was reached without her knowledge and approval. *Application,* pp. 9, 11 n.8. Petitioner also states that habeas counsel did not consult with or advise him of the withdrawal of the IAC claim. *Application*, p. 10. Petitioner concludes, therefore, that habeas counsel's conflict of interest "prevented [Petitioner] from presenting any [IAC] claims in state court." *Application*, p. 16.

The record contains facts, unaddressed by Petitioner, refuting his conclusion that a conflict of interest was responsible for the lack of exhaustion in this case. Most significantly, the state habeas application contained not one but three related IAC complaints. (1 SHR 39-40). Ground 10 contains the "arguable" IAC claim, which Petitioner criticizes as a half-hearted effort devoid of proper legal argument. *Application*, p. 8. But it is apparent

5

from the text that ground 10 was presented as an "arguable" claim only because a lack of funds prevented the investigation necessary to allege prejudice under *Strickland*.[3] (1 SHR 75-77). In related grounds 11 and 12, habeas counsel further argued that the trial court's unreasonable funding cap caused "habeas counsel's inability to discover the nature and extent of the mitigating evidence missed by trial counsel" in violation of Petitioner's constitutional and statutory rights. (1 SHR 77-78). The record contains a corresponding motion for additional funding that the trial court had denied three weeks earlier. (2 SHR 425-27). Contrary to the Petitioner's allegation that habeas counsel "turned against his client," it appears that habeas counsel purposefully preserved the trial court's denial of funds with an eye toward helping future federal habeas efforts in the case. *Application*, p. 15, n.15.

Approximately two weeks after the state writ application was filed, however, state habeas counsel again moved for supplemental funding and this time, the motion was granted. (1 SHR 201-203). Six months after that, state habeas counsel sent the letter withdrawing grounds 10, 11, and 12, in which he explained:

> Those grounds concerned the possibility that Petitioner received ineffective assistance of counsel at trial because of the timing of the appointment of a mitigation

---

[3] For a claim of deficient mitigation investigation in a capital proceeding, the prejudice component requires the newly discovered mitigation evidence to be re-weighed against the aggravating evidence. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Thus, habeas counsel could not make a claim of prejudice without knowing what evidence trial counsel overlooked.

6

> investigator (ground ten) and the trial court's limitation of post-conviction expenses to investigate the issue (grounds eleven and twelve).
>
> Subsequent to its initial cap on post-conviction writ expenses, the trial court granted Petitioner additional funds to pursue the investigation of that claim. Those funds proved to be adequate. Counsel is now convinced that adequate pretrial investigation was conducted because no significant additional mitigating evidence would have been discovered had counsel obtained the services of his expert mitigation expert [sic] at an earlier date.

(SHR Supp. 4) (emphasis added).

While the present application for funds refers to this letter, Petitioner inexplicably fails to acknowledge the funding issue. *Application*, p. 9. Petitioner entirely ignores grounds 11 and 12--which were argued jointly with ground 10--as well as the supplemental-funding motion that the trial court granted. With these adverse facts conveniently overlooked, Petitioner's expert concludes that the "*only* explanation for his conduct is that [state habeas counsel] placed the interests of [trial counsel] and himself ahead of his duty of loyalty to [Petitioner]." *Application*, Ex. 2, p. 15 (emphasis added). Yet the record presents an obvious alternative explanation: unwilling to forego the claim entirely but reluctant to assert a frivolous claim, state habeas counsel presented the *Strickland* claim as an "arguable" one while he pursued the funding needed to allege prejudice. Upon obtaining additional funds, Ms. Knox completed her investigation, after which habeas counsel concluded the claim was meritless and withdrew it.

Petitioner neither rebuts the reason provided by habeas counsel for withdrawing the claim nor presents any legal support for this Court to simply ignore it. He also fails to acknowledge that Knox's insufficiently funded pre-petition investigation, upon which his argument so heavily relies, was apparently not her final opinion in the case.[4] *Application*, p. 6-8. Instead, Petitioner fails to disclose the critical evidence contradicting his claim and then frames the remaining facts in a very different light.[5]

---

[4] Petitioner does note that Knox "appears not to have completed" her investigation until November 14, 2008, six weeks after the withdrawal letter was sent by counsel. *Application*, p. 10, n.7. But this footnoted observation is based on no discernible source and could not reasonably lead the reader to discover the apparent truth in this case--that Knox's investigation was supplementally funded after the petition was filed and that withdrawal of the claims was based on the results of Knox's *supplemental* investigation.

[5] Merely one example of Petitioner's multiple, unreasonable allegations of misconduct is a claim that habeas counsel improperly offered trial counsel a chance to respond to allegations of ineffectiveness made in an affidavit by the trial mitigation specialist, Linda Sanders, which Petitioner contends was a breach of confidential work product. *Application*, p. 7, 14. Witness statements, such as Sanders's affidavit, are neither confidential nor work product. *See* Tex. R. Civ. P. 192.5(c)(1); *see also* Tex. R. Evid. 615; *e.g., Roberts v. State*, 220 S.W.3d 521, 526-27 (Tex. Crim. App. 2007). Moreover, a petitioner waives confidentiality when he brings a claim of ineffective assistance against trial counsel. *See United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009); Tex. Disciplinary Rules Prof'l Conduct 1.05(c)(5).

Furthermore, habeas counsel's effort to obtain an affidavit from trial counsel before filing the state habeas application was proper strategy under *Strickland*: a record that is silent as to the reasons behind counsel's decision does not advance an IAC claim because it does not overcome the presumption that the decisions were based upon sound trial strategy. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (instructing that trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective); *Ex parte Varelas*, 45 S.W.3d 627, 629-30, 632 (Tex. Crim. App. 2001) (observing that record on direct appeal is inadequate to develop IAC claim in most cases, but in a writ, the record can be supplemented with facts, specifically, trial counsel's affidavit). Trial counsel's responsive affidavit also served the practical purpose of allowing habeas counsel to argue to the habeas court that he had thereby established a controverted fact issue that triggered the right to a hearing under the Texas habeas statute. (1 SHR 40); Tex. Code Crim. Proc. Ann. art. 11.071, § 8,9 (West 2011).

As a practical matter, an informal statement obtained from trial counsel regarding his intended strategy may be more useful to the petitioner's claim than

The Court will not defer its ruling on the application for funds while the Supreme Court considers *Martinez* and *Maples* because the conflict-of-interest allegations in this case are based on an unreasonable investigation of the facts. *See* Fed. R. Civ. P. 11; *Callahan v. Schoppe*, 864 F.2d 44, 46 (5th Cir. 1989) (holding that Rule 11 imposes duty of reasonable investigation into the facts and law prior to filing a document with a court). Contrary to serving the client, federal habeas counsel's baseless allegations fail to inspire the Court's confidence, waste limited judicial resources, and only distract from claims upon which Petitioner would be more likely to prevail. Counsel's omission is even more disturbing given that this funding application was originally filed *ex parte* and under seal (doc. 45), thereby depriving Respondent of notice and an opportunity to respond to the allegations. Counsel is warned that future frivolous allegations or allegations that do not acknowledge relevant, contrary facts may result in the imposition of sanctions. *See* Fed. R. Civ. P. 11(b). While legal challenges to the representation of prior counsel are an inherent part of zealous habeas litigation, the motion here has no rational basis. Death is different, but the death penalty does not authorize any means necessary on the part of federal habeas counsel.

---

more considered testimony provided by trial counsel after the writ has been filed and the adversarial process is underway. And, of course, a very practical way to convince trial counsel to discuss his representation informally is to present him with information, such as the Sanders affidavit, that calls for an explanation.

### III.   Reasonable Necessity

Alternatively, assuming the IAC claim is procedurally viable, Petitioner is far from showing that the requested expert is reasonably necessary to the representation. *See* 18 U.S.C. § 3599(f). In preparation for the 2005 trial, the defense team used the services of a fact investigator, a mitigation specialist (Sanders), and a psychologist, Tim Proctor, whose duties also included the collection and investigation of mitigation evidence. (1 SHR 181, 183; 36 RR 20). In support of the 2008 state habeas application, funds were provided for Knox to conduct a new mitigation investigation and assess the effectiveness of the mitigation presentation at trial. (1 SHR 104-05). Funds were also provided for psychologist Gilda Kessner to review Dr. Proctor's testimony and opine "on the development and presentation of mitigation and risk assessment testimony" at trial. (1 SHR 195).

In 2010, Petitioner retained psychologist Dr. Bekh Bradley-Davino and neuropsychologist Dr. Gilbert Martinez to evaluate Petitioner. *Application for Authorization of Funds to Obtain Mental Retardation Expert*, p. 4 (doc. 48). In his twenty-page report, Dr. Bradley-Davino diagnosed Petitioner with (1) bipolar disorder with psychotic features, (2) anxiety disorder, and (3) poly-substance dependence in remission. *Application*, Ex. 1, p. 12, 20. There is no written report from Dr. Martinez, but the data provided indicates that Dr. Martinez administered the Wechsler Adult

Intelligence Scale IV to Petitioner in 2010. *Application*, Ex. 1 (doc. 48).

In his present application for funds, Petitioner again challenges the trial testimony of Dr. Proctor, stating it was uninformed because "no reasonable investigation into mental health issues . . . was ever conducted" at trial. *Application*, p. 2-3. Assuming this contention is true, Petitioner fails to explain how the experts retained since trial have been insufficient to develop mental-health evidence. As noted, Dr. Kessner was retained specifically to review Dr. Proctor's trial testimony. Petitioner does not contend that he was denied a full and fair opportunity to develop the factual basis of this claim in the state habeas court.[6] He states only that a reasonable sentencing investigation would have included the retention of an expert specializing in neuro-pharmacology and that such an expert would opine that Petitioner "is a person suffering from long-standing substance dependence, anxiety, bipolar disorder with psychotic features, and the after-effects of severe childhood trauma." (*Application*, p. 1-2). But these topics were addressed by prior experts. (1 SHR 110 (declaration of Knox)); *Application*, Ex. 1 (aff't of Bradley-Davino).

---

[6] Nor could he reasonably do so. The unacknowledged content of the withdrawal letter written by state habeas counsel indicates that the supplemental, post-petition funds proved to be adequate. (SHR Supp. 4).

11

Federal habeas counsel assert that they must conduct a reasonable sentencing investigation themselves in order to demonstrate what evidence could have been discovered at trial, but this is simply a request for a fishing expedition. Section 3599(f) does not authorize federal habeas "retrials." *See Williams v. Taylor*, 529 U.S. 362, 386 (2000) (Stevens, J., plurality op.) (explaining the purposes of the Anti-Terrorism and Effective Death Penalty Act). Without an explanation as to how the services of another mental-health expert might relate to the claim of ineffective assistance of trial counsel, Petitioner fails to demonstrate a reasonable need for the services he seeks. *See Patrick v. Johnson*, 48 F. Supp. 2d 645, 646 (N.D. Tex. 1999) (noting that funding statute was not designed to investigate speculative claims). At best, Petitioner shows that the sought-after funding would only supplement prior evidence developed in state court. *See Barraza v. Cockrell*, 330 F.3d 349, 352 (5th Cir. 2003) (upholding denial of supplemental funding for additional psychiatric assistance where state habeas efforts did not produce the evidence that Barraza claimed his trial counsel should have located).

### IV. Unusual Character or Duration

Finally, Petitioner seeks funds in excess of the statutory limit. As noted, requests in excess of $7,500 must be further supported by a showing that the requested services are "of an unusual character or duration." 18 U.S.C. § 3599(g)(2). The application does not allege, much less demonstrate, that the

requested psychiatric services are of unusual character or duration.

The application for funds is DENIED.

SIGNED October 27, 2011.

                                              TERRY R. MEANS
                                              UNITED STATES DISTRICT JUDGE

TRM/ks:be