IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EDWARD LEE BUSBY, | § | |
|     *Petitioner,* | § | |
| | § | |
| V. | § | |
| | § | Civil Action No. 4:09-CV-160-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     *Respondent.* | § | |

**ORDER DENYING APPLICATION FOR FUNDS**

On September 9, 2011, Edward Lee Busby ("Petitioner") filed an *Application to Obtain the Reasonably Necessary Services of a Mental Retardation Expert* (doc. 48). Rick Thaler ("Respondent") opposes the application on the grounds that Petitioner seeks to fund a meritless and procedurally barred claim (doc. 51). The Court will deny the request for funds.

**I. Applicable Law**

A district court may authorize expenditures for investigative or expert services that the court finds to be "reasonably necessary." *See* 18 U.S.C. § 3599(f). For requests that exceed $7,500, Petitioner must further show that the excess funding is "necessary to provide fair compensation for services of an unusual character or duration" and receive approval from the chief judge of the circuit. *See* 18 U.S.C. § 3599(g)(2). A district court does not abuse its discretion in denying funding when a petitioner has "(a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when

the sought-after assistance would only support a meritless claim, or (c) when the sought-after assistance would only supplement prior evidence." *Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009) (discussing predecessor statute) (citations omitted).

## II.  Exhaustion

Petitioner requests $11,000 to retain the services of a psychologist, who specializes in intellectual disability, in order to develop claims that trial counsel's sentencing investigation was constitutionally deficient (claim 1a) and that Petitioner is exempt from the death penalty because he is person with mental retardation (claim 2).  Petitioner acknowledges that these claims are unexhausted. *Application*, pp. 5, 19 n.20. Respondent argues that the claims are therefore procedurally barred under *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Petitioner contends the claims are procedurally viable, however, because the lack of exhaustion was due to "multiple undisclosed conflicts of interest under which [Petitioner's] appointed state habeas counsel labored." *Application*, p. 5. This argument focuses on the ineffective-assistance-of-counsel (IAC) claim, which state habeas counsel briefed and filed but then withdrew in a letter to the Texas Court of Criminal Appeals (CCA) after he received supplemental funding to complete his investigation of the claim. (1 SHR 201-03; SHR Supp. 4). Unlike the IAC claim, Petitioner's mental-retardation claim was not raised in the state habeas petition. (1 SHR 6-8).  Petitioner argues, however,

2

that the mental-retardation claim is necessarily subsumed in any IAC claim and, for purposes of procedural default, the claims cannot be untangled. *Application*, p. 19, n.20. The Court assumes, without deciding, that these two claims cannot be untangled for purposes of procedural default.

Petitioner's allegation that state habeas counsel withdrew the IAC claim because of a conflict based upon his professional relationships with trial counsel fails to acknowledge controverting evidence in the record regarding the funding issue that state habeas counsel faced. This Court has addressed Petitioner's conflict-of-interest allegations in detail in a previous order denying his *Application for Authorization of Funds to Obtain the Reasonably Necessary Services of a Psychiatrist with Expertise in Neuropharmacology* (doc. 49). The Court incorporates herein the reasoning of that order and likewise rejects the allegations for purposes of this motion. *Order Denying Application for Funds* (doc. 54). The claims Petitioner seeks to fund are, therefore, unexhausted and appear to be procedurally barred.

### III.  Reasonable Necessity

Alternatively, assuming these claims are procedurally viable, Petitioner has not shown that the requested expert is reasonably necessary to the representation. *See* 18 U.S.C. § 3599(f). In Texas, a petitioner claiming mental retardation must demonstrate (1) significantly subaverage general intellectual functioning, defined as an IQ of about 70 or below, (2) accompanied by related

limitations in adaptive functioning, (3) the onset of which occurs prior to the age of 18. *See Maldonado v. Thaler*, 625 F.3d 229, 233 (5th Cir. 2010); *Ex parte Hearn*, 310 S.W.3d 424, 428 (Tex. Crim. App. 2010). Petitioner seeks $11,000 to hire psychologist Stephen Greenspan to perform an assessment of Petitioner's limitations in adaptive functioning only.

In preparation for the 2005 trial, the defense team retained psychologist Tim Proctor for several purposes, including the gathering of evidence of Petitioner's intellectual capacity and evaluating his mental status. (1 SHR 183). Relevant to the mental retardation issue, Dr. Proctor testified at trial that he administered to Petitioner the "gold standard" of intelligence tests, the WAIS-III, and Petitioner scored a 77. (36 RR 40, 46-47, 53). He also administered the BETA-III, a group-administered screening test, specifically to compare it with an unusually high score that Petitioner obtained on the BETA while incarcerated. (36 RR 42, 48-50, 53). Dr. Proctor also administered the WRAT-3 to assess Petitioner's academic achievement, the results of which were consistent with a prior diagnosis of learning disability and also consistent with four different reading tests that were administered to Petitioner by the prison school. (36 RR 42, 50-52). To assess Petitioner's effort, Dr. Proctor administered the Test of Memory Malingering (TOMM), on which Petitioner made a perfect score. (36 RR 43-45). Petitioner's scores did not warrant a diagnosis of mental retardation, but Dr. Proctor testified that the scores

consistently placed Petitioner in the bottom 6th to 10th percentile of the population. (36 RR 54-56). He also testified that Petitioner's intellectual functioning "is about where it likely has always been," despite alcohol and drug abuse. (36 RR 59). Dr. Proctor's conclusions were essentially the same as those of the prosecution's expert. (36 RR 61, 64-66). Dr. Proctor's testimony was informed by the work product of the defense team's mitigation specialist as well as the defense team's fact investigator. (36 RR 20).

In support of the 2008 state habeas application, funds were provided for psychologist Gilda Kessner to review Dr. Proctor's raw test data and testimony. (1 SHR 112, 195). Dr. Kessner did not disagree with Dr. Proctor's testimony regarding intelligence but recommended re-testing Petitioner with the new WAIS-IV when it became available in the fall of 2008, to rule out the possibility that Petitioner's WAIS-III score was inflated due to the "Flynn Effect."[1]  (1 SHR 197-98). She also recommended unspecified investigation into Petitioner's adaptive behavior history out of concern that the "apparent perfunctory reliance on the obtained score truncated the investigation into the possibility of the presence of mental retardation." (1 SHR 198). Funds were provided

---

[1] The Flynn Effect is a theory which posits that IQ scores of a population rise over time without corresponding increases in intelligence, and thus, IQ tests must be re-normalized over time. *See Maldonado v. Thaler*, 625 F.3d 229, 238 (5th Cir. 2010). But neither the Fifth Circuit nor the CCA has recognized the Flynn Effect as a scientifically valid method for adjusting the score obtained by an individual on a given IQ test. *See id.; In re Mathis*, 483 F.3d 395, 398 n.1 (5th Cir. 2007).

by the state habeas court for Toni Knox to conduct a new mitigation investigation and assess the effectiveness of the mitigation presentation at trial, including the choice to investigate and present evidence of Petitioner's low intelligence. (1 SHR 104-05, 110-11). These funds were supplemented after the state habeas application was filed, and state habeas counsel represented to the CCA that the supplemental funds proved adequate. (2 SHR 201-202; SHR Supp. 4).

In 2010, Dr. Gilbert Martinez administered the WAIS-IV to Petitioner, resulting in a full-scale score of 74. *Application*, Ex. 1, p. 1-2. This result, when viewed in isolation from his other scores, potentially places Petitioner within the range of scores required for a mental-retardation diagnosis.[2]

In 2010, Petitioner also retained Dr. Bradley-Davino to perform a psychological evaluation. *Application*, Ex. 2. Dr. Bradley-Davino discussed Petitioner's limited intellectual abilities and WAIS-IV score in a comprehensive report based upon 10 hours of clinical interviews and a review of trial evidence, medical records from six different facilities, the file of Dr. Proctor, the reports of Dr. Martinez and Dr. Kessner, school records, law-enforcement records from five different agencies, prison records, and the written statements of his sister, the

---

[2]Given the standard error of measurement, any score can actually represent a score that is five points higher or five points lower than the actual IQ. Thus, the 74 obtained by Petitioner in 2010 represents a score range of 69 to 79. *Hearn*, 310 S.W.3d at 428, n.8.

mother of his child, his special-education teacher, a high school classmate, his high school football coach, two neighbors, an uncle, and a friend. *Application*, Ex. 2, p. 1-2. Dr. Bradley-Davino did, in fact, opine that Petitioner has a "clear history of extensive intellectual and adaptive functioning limitations." *Application*, Ex. 2, p. 20.

Petitioner fails to explain how the experts retained in this case to date have been insufficient to develop evidence of his adaptive functioning. He does not claim that he was denied a full and fair opportunity to develop the factual basis of this claim in state court or that some aspect of it is yet unexplored. He states only that a reasonable sentencing investigation would have included the retention of a mental retardation expert and that such an expert would opine that Petitioner is a person with mental retardation. *Application*, p. 1-2. But Petitioner did, in fact, retain a mental-retardation expert for use at trial. This expert's opinion was supported by the work product of a fact investigator and mitigation specialist. Petitioner then retained another psychologist and mitigation investigator with state habeas funds.

In this proceeding, he has retained Drs. Martinez and Bradley-Davino. Aside from stating generally that Dr. Bradley-Davino is not a mental retardation expert, Petitioner fails to adequately explain why Dr. Bradley-Davino's evaluation was inadequate, given that he reviewed information provided by the people that knew

Petitioner best during his developmental period, opined on the existence of Petitioner's historical limitations in adaptive functioning, and diagnosed Petitioner with three separate psychiatric disorders. More significantly, Petitioner does not state why Dr. Martinez, who was retained specifically to evaluate Petitioner for mental retardation, was an inadequate expert on the subject.[3]

Section 3599(f) does not authorize federal habeas "retrials." *See Williams v. Taylor*, 529 U.S. 362, 386 (2000) (Stevens, J., plurality op.) (explaining the purposes of the Anti-Terrorism and Effective Death Penalty Act). Aside from the fact that, apparently, none of the experts in this case has diagnosed Petitioner with mental retardation, the Court is at a loss to see the purpose behind this funding request. Because the sought-after funding would only supplement prior evidence developed in the case, it should be denied. *See Barraza v. Cockrell*, 330 F.3d 349, 352 (5th Cir. 2003) (upholding denial of supplemental funding for additional psychiatric assistance where state habeas efforts did not produce the evidence that Barraza claimed his trial counsel should have located); *see also Wright v. Angelone*, 151 F.3d 151, 163 (4th Cir. 1998) (upholding denial of funds for fourth expert to assess petitioner's mental deficiencies because issue was

---

[3] The Court notes that Dr. Martinez's report is missing the first three pages, which may possibly contain information relevant to this Court's assessment of his adequacy as an expert. Nevertheless, the Court can not make assumptions based on evidence that is not before it.

thoroughly investigated, presented to jury, and ultimately resolved at trial).

### IV.   Unusual Character or Duration

Finally, Petitioner seeks funds in excess of the statutory limit.  As noted, requests in excess of $7,500 must be further supported by a showing that the requested services are "of an unusual character or duration."  18 U.S.C. § 3599(g)(2). The application does not allege, much less demonstrate, that the requested mental retardation expert would provide services of unusual character or duration.

The application for funds is DENIED.

SIGNED October 31, 2011.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE