IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EDWARD LEE BUSBY, | § | |
| _Petitioner,_ | § | |
| | § | |
| V. | § | |
| | § | Civil Action No. 4:09-CV-160-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| _Respondent._ | § | |

**AMENDED STAY AND ABEYANCE ORDER**

The Stay and Abeyance Order entered August 15, 2012 (doc. 60) is withdrawn, and the order below is substituted therefor.[1]

Pursuant to 28 U.S.C. § 2254, Petitioner Edward Lee Busby has filed an amended application for writ of habeas corpus alleging seven grounds for relief from his conviction and death sentence (doc. 25). _See State v. Busby_, No. 090589A (Tarrant Co. Crim. Dist. Ct. No. 2, Nov. 17, 2005). Respondent Rick Thaler ("Director") asserts that five of the seven grounds are unexhausted and procedurally barred, including a claim that trial counsel rendered ineffective assistance by failing to conduct a reasonable sentencing mitigation effort ("IAC claim"). _Answer_ at 11-13 (doc. 33); _Application_ at 44-48. Busby agrees the IAC claim is unexhausted. _Reply_ at 3 (doc. 40). For the following reasons, the

---

[1]This order contains an additional paragraph on pages nine and ten.

Court stays this proceeding and holds it in abeyance so that Busby may exhaust his claims in state court.[2]

## I.  APPLICABLE LAW

Applicants seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999). Such presentment can take place by direct appeal or through state habeas proceedings. *Morris*, 413 F.3d at 491; *see* Tex. Code Crim. Proc. Ann. art. 11.071 (West 2011) (Texas capital habeas statute).

When an applicant fails to exhaust his claims in state court, a federal court has the discretion either to stay and abate or to dismiss the action. *See Brewer v. Johnson*, 139 F.3d 491, 493 (5th

---

[2]This Court rejected the argument in Busby's reply that state habeas counsel was acting under a conflict of interest that excused the exhaustion requirement and any procedural default. *Ex parte Order on Application for Funds* (doc. 22); *Order Denying Motion for Leave to Conduct Discovery* (doc. 50); and *Orders Denying Application for Funds* (docs. 54, 55). Despite assertions that he would do so, Busby has not moved for a stay and abeyance nor even argued that his unexhausted claims are viable in *state* court. *Reply* at 17 n.16, 54. Nevertheless, a final disposition by the Court at this time would be ill-advised given the likelihood that Busby will return to state court in the future and litigate these claims, potentially requiring the reconsideration of any procedural ruling made by this Court. *See, e.g., Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010); *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007).

Cir. 1998).[3]  A stay and abeyance should be granted only when there is good cause for the failure to exhaust, the unexhausted claims are potentially meritorious, and there is no indication that the applicant has engaged in intentionally dilatory litigation tactics. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).  The background facts related to this IAC claim are helpful for a full understanding of the exhaustion issue.

## II.  BACKGROUND FACTS

Trial counsel was appointed on February 23, 2004.  (1 CR 17). Counsel moved for the appointment of an investigator and a mitigation specialist on August 18, 2005, and the motions were granted on September 27.  (1 CR 23, 27, 153, 154).  Counsel moved for the appointment of a psychologist on October 6, which was granted on October 10.  (1 CR 188-95).  Trial testimony began a month later on November 9.  (30 RR 3).  The State's evidence at trial showed that Busby (a drug dealer and a pimp) along with his girlfriend, Kathleen Latimer (a prostitute), abducted an elderly woman from a grocery-store parking lot, drove the victim's car to Oklahoma with the victim in the trunk, and then suffocated her by wrapping her head with duct tape.  The State also argued that Busby

---

[3]Busby filed his application in this Court on the last day of the one-year statute-of-limitations period.  *See* 28 U.S.C. 2244(d).  Because the limitations period is expired, dismissal of this application would likely mean the termination of any federal review of this death-penalty case.  *See Rhines v. Weber*, 544 U.S. 269, 275 (2005).

lied when he told the police that he taped the victim because Latimer coerced him to.  (32 RR 62, 65-66).

The trial court's punishment charge contained two statutory issues, the answers to which would determine whether Busby was given a life-in-prison or a death sentence.  (2 CR 355-56); *see* Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b), (e) (West 2009) (defining the future dangerousness and the mitigation special issues).  Through the testimony of the defense psychologist, who diagnosed Busby with a severe antisocial personality disorder, trial counsel conceded that Busby presented a high risk of future violence to society.  (36 RR 39-40, 62).  Thus, counsel necessarily relied solely on the mitigation issue to save his client's life.

The defense mitigation case consisted of testimony from Busby's two sisters,[4] his special education teacher, two special education administrators who explained Busby's school records, and additional testimony from the psychologist about Busby's low

---

[4]Kimiko Coleman, Busby's older sister, testified as follows:  Busby had a good relationship with his father when the father was sober; Busby had a good relationship with their mother; he was very protective of and easily influenced by women; they grew up in a poor-to-middle-class black area of Pampa, Texas, a "little country town;" Busby at one time wanted to be a police officer; Busby stole from her and hit her once, resulting in her calling the police; and it was like Busby to kill a man if he felt he needed to defend himself, but Busby would not kill a woman.  (35 RR 50-70).  His sister Tarsharn testified as follows: they had a pretty average home life, but Busby's father was an alcoholic who left when Busby was 5 or 6, and would not come visit them even though he remained nearby; their mother worked as a nurse, and they moved back and forth between Pampa and Amarillo; Busby was in special education and did well until high school; Busby was a very good athlete and, in middle school, had colleges looking at him to play football; Busby was a leader but girlfriends could lead him astray; Busby was very protective of her and her sister; Busby had a fair relationship with their mother; Busby used marijuana and once stole a bicycle from her; and she was still living at home when Busby married and moved to Florida with his wife.  (35 RR 71-83)

intelligence, substance abuse, two suicide attempts, and two suicidal gestures. (35 RR 12, 22, 33; 36 RR 46-58). Busby's mother, LaVerne Busby, and a cousin, Barbara Ryan, were subpoenaed and present at trial, but they were not called to testify because counsel believed their testimony would be more injurious than helpful. (36 RR 89-91; 35 RR 69). Counsel's evidence also included a video recording of a maximum security prison in Texas. (35 RR 85-86).

In the state habeas court, Busby's counsel argued that there were disputed questions of material fact as to whether Busby's trial counsel rendered ineffective assistance due to the late timing of the mitigation investigation. (1 SHR 40, 42). State habeas counsel asserted that the convicting court's $3,000 funding cap was inadequate to uncover what additional mitigation evidence could have been discovered had the mitigation investigation begun earlier. (1 SHR 77). On state habeas counsel's subsequent motion, the convicting court granted an additional $1,000, for a total of $4,000, to complete the investigation. (1 SHR 201-03). Approximately six months later, state habeas counsel wrote a letter to the Texas Court of Criminal Appeals ("CCA") withdrawing the IAC claim as well as the related complaints about inadequate post-conviction funding. (Supp. SHR 4). Counsel stated that the additional funds proved to be adequate and he was convinced no significant additional mitigating evidence would have been discovered had trial

5

counsel obtained the services of a mitigation expert at an earlier date. (Supp. SHR 4). The convicting court entered supplemental findings that state habeas counsel's withdrawal of the claims was in keeping with the highest standards of ethical conduct. (Supp. SHR 3). These findings were adopted by the CCA. *Ex parte Busby*, No. WR-70,741-01, 2009 WL 483096 (Tex. Crim. App. Feb. 25, 2009)(per curiam).

Federal habeas counsel has supplemented the record in this Court with unsworn declarations from Busby's sisters describing a childhood much different from the one they described in trial, particularly regarding violent acts, abuse, and beatings by their mother, now deceased, against the children and against Busby's father, her boyfriend, and a neighbor. (Writ Ex. 9, 10).[5] The sisters also describe growing up with poverty, hunger, and racism in a small town. Federal habeas counsel has also provided declarations from a woman with whom Busby had a child, a special education teacher, a football teammate from high school, and Busby's football coach. These declarations describe Busby's young adulthood with instances of parental neglect, poor hygiene, illiteracy, emotional disturbances, mood swings, intellectual deficiencies, and gullibility. (Writ Ex. 11, 12, 13). Additional

---

[5]For example, Tarsharn describes one occasion where their mother fired a gun at Busby as he ran out of the house, and Kimiko describes another where their mother hit him with brass knuckles on the temple. (Writ Ex. 9, no. 18; Writ Ex. 10, no. 28).

declarations from an acquaintance, two neighbors, and a nephew dispute Busby's status as a pimp and drug dealer and describe an intellectually challenged drug addict who relied on older, white prostitutes (including his co-actor Latimer) to "mother" him and help him cope with life but who also took advantage of him. (Writ Ex. 18, 19, 20, 21). This new information, particularly the assertions of childhood abuse and Busby's relationship with Latimer, differs in kind as well as in detail from that which was introduced at trial.

### III. ANALYSIS

Under *Rhines v. Weber*, a stay and abeyance should be granted only in the limited circumstances when there is good cause for the failure to exhaust, the unexhausted claims are potentially meritorious, and there is no indication that the applicant used dilatory litigation tactics. The record shows that state habeas counsel filed the IAC claim in state court and, after receiving additional funding, withdrew the claim because he believed he could not prove prejudice. This withdrawal was found to be in keeping with the highest ethical standards. There is no indication otherwise and no suggestion that the withdrawal and subsequent lack of exhaustion was an intentionally dilatory litigation tactic.

Moreover, the record supports the conclusion that there is new evidence in the form of witness declarations that were apparently unavailable despite the diligence of state habeas counsel. Under

the circumstances, the existence of newly available evidence is an indication that Busby's counsel had good cause for withdrawing the claim due to a legitimate belief that the claim lacked merit. *See United States ex rel. Strong v. Hulick*, 530 F. Supp. 2d 1034, 1043 (N.D. Ill. 2008) (holding that, to the extent unexhausted claims are based on new evidence, good cause exists for the failure to exhaust).

Finally, assuming Busby's new evidence is true, the IAC claim has potential merit.  The record presents a question as to whether trial counsel would have conducted a different mitigation investigation had he known at an earlier time that his psychologist would cause him to concede the future-dangerousness special issue. Indeed, while asking the trial court to attach Barbara Ryan to secure her attendance in court, counsel acknowledged that witnesses on behalf of Busby were "few and far between."  (33 RR 134). Although the discovery of additional witnesses (or of additional information from witnesses who did testify at trial) does not, in hindsight, render counsel's investigation deficient, it raises a legitimate question as to whether counsel's choices to pursue or forego those avenues of investigation were reasonable at the time they were made. *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (instructing that the determination of whether counsel exercised reasonable professional judgment in failing to present mitigating evidence focuses on whether the investigation supporting counsel's

decision was itself reasonable, and this includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time).

The record also raises a question regarding the competence of the trial mitigation investigator, Linda Sanders. In 2008, the mitigation investigator retained by state habeas counsel obtained an affidavit from Sanders. In the affidavit, Sanders expressed concern about time constraints imposed on her due to the late appointment and also said she had broken her foot on the night before she traveled to Busby's hometown to interview potential witnesses. (1 SHR 92, 93). Sanders concluded that an adequate mitigation investigation could not have been done in the time allotted to her. (1 SHR 93). In a responsive affidavit, trial counsel stated that this was the first time he had employed Sanders. (1 SHR 96). He viewed her as enthusiastic but lacking a very thorough understanding of criminal law and procedure. He said that she was encouraged to devote more hours to the case if she thought it necessary and that "if Ms. Sanders was not up to the task at hand, she could have simply declined the work with us. She did not." (1 SHR 96-97). These dueling affidavits raise concerns about the sufficiency of the mitigation investigation at trial as well.

The new information provided to this Court also undermines state habeas counsel's conclusion that no significant additional mitigating evidence would have been discovered had trial counsel

begun the mitigation investigation at an earlier date.  The jury heard testimony that Busby had an average home life and a good or fair relationship with his mother who, surprisingly, was subpoenaed and did not testify.  In contrast, information regarding physical and emotional abuse by the mother could have been offered to explain Busby's antisocial personality and to support defense counsel's jury argument that Busby's actions were attributable to his upbringing. (36 RR 131-36).  Furthermore, except for general testimony that Busby could be easily influenced by a woman and that "if he got him a girlfriend or something, she can lead him stray," the jury had no reason to believe Busby's statement that Latimer coerced him to tape the victim.  (35 RR 55, 78).  Counsel could have further developed the theory with information from the mother of Busby's child that Busby depended on her (Writ Ex. 11) and with information that Busby relied on prostitutes in general and that Latimer in particular was a mother figure who manipulated and took advantage of him.  (Writ Ex. 18, 19, 20, 21).  The Court does not conclude that prejudice is shown by the unsworn declarations provided to this Court, only that, given the rather condensed mitigation case presented and trial counsel's concession as to future dangerousness, there is enough potential merit to the IAC claim to warrant abatement.  *See Wiggins*, 539 U.S. at 534 (instructing that prejudice is shown under *Strickland v. Washington* where there is a reasonable probability, sufficient to undermine

confidence in the outcome, that but for counsel's errors the result of the proceeding would have been different).

In assessing the potential merit of this claim, the Court also considers whether the Texas subsequent-writ bar would prevent Busby from presenting his claim in state court, in which case abeyance would be futile.  *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005) (holding that when petitioner is barred from raising claims in state court, his unexhausted claims are "plainly meritless").  The Court concludes that Busby is not clearly barred from state court.

Generally speaking, section 5(a) of article 11.071 of the Texas Code of Criminal Procedure prohibits a state court from considering the merits of a subsequent habeas application unless the application contains specific facts establishing that:  (1) the current claims and issues have not been and could not have been presented previously because the factual or legal basis for the claim was unavailable; *or* (2) by a preponderance of the evidence, but for a violation of the Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; *or* (3) by clear and convincing evidence, but for a violation of the Constitution, no rational juror would have answered in the state's favor one or more of the special issues submitted to the jury at punishment.  *See* art. 11.071, § 5(a).

Busby has presented this Court with a substantial body of new mitigation evidence that may satisfy the exception in § 5(a)(1) based on previously unavailable evidence.  Similarly, he may be able to satisfy § 5(a)(3) that, but for a violation of the Constitution (here, counsel's alleged ineffective assistance), no rational juror would have answered the mitigation special issue in the state's favor.  *See Ex parte Blue,* 230 S.W.3d 151, 161 n. 42(Tex. Crim. App. 2007) (noting that it is arguable that § 5(a)(3) would permit a subsequent state-habeas applicant to proceed with a showing by clear and convincing evidence that no rational juror would have answered the mitigation special issue in the state's favor); *see also Balentine*, 626 F.3d at 856 (discussing *Blue*). Additionally, given the unusual circumstances of state habeas counsel's withdrawal of the claim from the original state writ application, the CCA could reopen the original writ on its own motion and revisit the issue.  *See, e.g., Ex parte Gonzales*, No. WR-70,696-01, 2012 WL 340407 (Tex. Crim. App. Feb. 1, 2012) (not designated for publication) (exercising authority to reconsider initial disposition of capital writ after case was abated in federal district court so that applicant could pursue state exhaustion proceedings).

Because the record raises fact issues regarding the reasonableness of the mitigation investigation and because the claim is not clearly barred under the Texas abuse-of-the writ doctrine, the IAC claim has the potential merit required by *Rhines*.

12

IV.  CONCLUSION

In light of the fact that a stay and abeyance can be properly granted on one claim, it is unnecessary to determine whether a stay and abeyance would be necessary on any other unexhausted claim.  To avoid any further delay, however, the parties are strongly encouraged to fully exhaust any potential issue that may be properly raised in the state courts before returning to this Court.

The habeas corpus application is **STAYED** and these proceedings are held in **ABEYANCE** under further order of this Court.  The Clerk of Court is directed to **administratively close** this case for statistical purposes.  However, nothing in this order shall be considered a final dismissal or disposition of this case, and this case shall be reopened upon proper motion filed in accordance with the provisions of this order, as set out below.

V.  SCHEDULE

*Rhines* counsels that even when stay and abeyance is appropriate, "the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA." *Rhines*, 544 U.S. at 277.  *Rhines* instructs district courts to "place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278.  Accordingly, Busby shall file an application for post-conviction relief on this claim and any other proper claim in the state court within **forty-five days** of the date

13

of this order, and thereafter promptly **notify** this Court, with identifying information, of the state proceedings instituted.

Following the exhaustion of state proceedings, Busby shall file an application to reopen the proceedings in this Court within **forty-five days** of the date of the final state-court order denying relief on this claim. If the state court grants relief, the Director must promptly notify this Court. If the grant of relief causes the remaining claims to become moot, then these proceedings shall be dismissed. If Busby fails to comply with this order, these proceedings shall be dismissed.

SIGNED August 17, 2012.

Terry R. Means
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/ks:be

14