IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EDWARD LEE BUSBY, | § | |
|     *Petitioner,* | § | |
| | § | |
| V. | § | |
| | § | Civil Action No. 4:09-CV-160-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     *Respondent.* | § | |

**ORDER DENYING MOTION TO LIFT STAY**

On August 17, 2012, this Court entered an order staying the habeas proceedings in this death-penalty case so that petitioner Busby could return to state court and exhaust a claim regarding the sufficiency of trial counsel's sentencing investigation. *See Amended Stay and Abeyance Order* (doc. 62). Before the Court is respondent Rick Thaler's Objection to Order Granting Stay and Abeyance ("Objection," doc. 63) and Busby's response ("Response," doc. 64). After considering the facts and legal arguments of counsel, the Court overrules the objections and denies the motion to lift the stay.

I. Applicable Law

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005)

(citing *Landis*). In federal habeas cases, stays must be compatible with the twin purposes of the AEDPA to (1) reduce delays in the execution of sentences, particularly in capital cases, and (2) encourage exhaustion in state court before bringing any claims to federal court. *See Rhines v. Weber*, 544 U.S. 269, 276-77 (2005); 28 U.S.C. § 2254 ("AEDPA"). Thus, "[i]t would likely be an abuse of discretion for a district court to deny a stay and dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Unexhausted claims lack merit, and abeyance would be futile, if the court to which the applicant must return for exhaustion proceedings would find the claim barred. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005).

In deciding whether an abeyance would serve the twin purposes of the AEDPA, the Court necessarily considers the limitations on federal courts when addressing unexhausted claims and the potential for future litigation. This Court may not, for example, grant relief on an unexhausted claim absent certain exceptions that do not apply here. *See* 28 U.S.C. § 2254(b)(1). The Court may, however, deny an unexhausted claim on the merits if the record dictates. *See* 28 U.S.C. § 2254(b)(2). The Court may also find unexhausted claims procedurally barred if the state court to which

the applicant must return to exhaust the claim would find the claim barred under state-law provisions deemed "independent and adequate" for denying relief.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Williams v. Thaler*, 602 F.3d 291, 305-06 (5th Cir. 2010); Tex. Code Crim. Proc. Ann. art. 11.071, § 5 (West 2012) (Texas' subsequent writ bar).  But procedural bars are subject to reversal under Rule 60(b) if the applicant returns to state court, files a subsequent writ, and obtains a dismissal order that is determined to be based, even in part, on federal law.  *See* Fed. R. Civ. P. 60(b) (Relief from Judgment or Order); *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010) (op. on reh'g) (acknowledging that, where an applicant returns to state court and gets a decision on the merits, *Ruiz v. Quarterman* is authority that the district court's initial failure to grant stay and abeyance can be source of error under *Gonzalez v. Crosby*, 545 U.S. 524 (2005)), *cert. denied*, 131 S. Ct. 2992 (2011); *e.g., Ruiz v. Quarterman*, 504 F.3d 523, 525, 527-28 (5th Cir. 2007) (holding that a lone concurrence in an unclear Texas Court of Criminal Appeals ("CCA") order dismissing a subsequent state writ "pulled the ground from under the federal district court's earlier judgment dismissing the claim and refusing to hold the federal claim in abeyance while Ruiz returned to state court with his unexhausted claim").

In its amended stay and abeyance order, this Court concluded that the denial of Busby's ineffective-assistance-of-counsel

("IAC") claim on the merits would not be appropriate, assuming the veracity of Busby's new witness declarations. *See Amended Stay and Abeyance Order* at 8-10 (doc. 62) (discussing potential merit of IAC claim). Respondent's objections do not take issue with the Court's assessment of the potential merit of the IAC claim. And since this Court may not grant relief on the unexhausted claim, the only remaining disposition available is a procedural-bar dismissal under *Coleman v. Thompson*.

## II.  Discussion

### A.  Procedural Bar/Potential Merit Analysis

The Court concluded that Busby is not plainly barred from litigating his IAC claim in state court. *Amended Stay and Abeyance Order* at 12. It would therefore be inappropriate to apply the federal procedural bar provided in *Coleman*. *See Coleman*, 501 U.S. at 735 n.1 (observing that federal habeas procedural default occurs when the state court to which petitioner would be required to present his claims for exhaustion would now find them procedurally barred). Respondent objects, without elaboration, that it is "clear" the claim would be barred in state court because the claim was "clearly available" and "Busby failed to properly raise it in his prior state habeas proceedings." *Objection* at 6, 7; *see also Respondent's Answer* at 12-13 n.17 (doc. 33). But this is not the test for the subsequent-writ bar under state law.

The Texas Code of Criminal Procedure prohibits a state court from considering the merits of a subsequent habeas application unless the application contains specific facts establishing one of three exceptions enumerated in article 11.071, section 5(a).[1] In its amended stay and abeyance order, this Court determined that Busby could potentially litigate his IAC claim in state court under section 5(a)(1). Under section 5(a)(1), the state applicant must establish that the new claim has not been *and* "could not have been" raised in the initial application because the factual or legal basis of the claim was previously unavailable. *See* art. 11.071, § 5(a)(1). A factual basis of a claim is unavailable if "the factual basis was not ascertainable through the exercise of reasonable diligence." Tex. Code Crim. Proc. Ann. art. 11.071, § 5(e). Respondent argues that there is "absolutely no evidence to indicate

---

[1] Section 5 provides:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

   (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

   (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

   (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Code Crim. Proc. Ann. art. 11.071, § 5(a).

5

that Busby's 'new' witnesses were unavailable to be interviewed" by state habeas counsel. *Objection* at 7.

Nevertheless, the record contains the following supplemental findings of fact and conclusions of law made by the convicting court with respect to state habeas counsel's investigation and withdrawal of the IAC claim:

> Applicant's habeas counsel has acknowledged that subsequent to his filing of Applicant's original application for writ off [sic] habeas corpus this court granted him additional funds to pursue the investigation of his claim of ineffective assistance of counsel against Applicant's trial attorneys.
>
> **After additional investigation, Applicant's counsel concedes that no additional witnesses who might have provided mitigating evidence have been discovered.**
>
> * * * * *
>
> Applicant's habeas counsel's withdrawal of grounds for review ten[,] eleven, and twelve, is in keeping with the highest standards of ethical conduct. See Tex. Disciplinary R. Prof'l Conduct 3.01 [Meritorious Claims and Contentions]; Tex. Disciplinary R. Prof'l Conduct 3.02 [Minimizing Burdens and Delays of Litigation]; Tex. Disciplinary R. Prof'l Conduct 3.03(a)(1) [Candor Toward the Tribunal - false statements]; Tex. Disciplinary R. Prof'l Conduct 3.03(a)(2) [Candor Toward the Tribunal - failures to disclose]; Tex. Disciplinary R. Prof'l Conduct 3.03(b) [Candor Toward the Tribunal - withdrawal of false evidence]; Tex. Disciplinary R. Prof'l Conduct 3.04(c)(2) [Fairness in Adjudicatory Proceedings - alluding to matters that are irrelevant or unsupportable]; Tex. Disciplinary R. Prof'l Conduct preamble ¶ 4 [Lawyer's Responsibilities].

(Supp. SHR 2-3) (emphasis added); *Ex parte Busby*, No. WR-70,747-01, 2009 WL 483096 (Tex. Crim. App. Feb. 25, 2009) (adopting supplemental findings and conclusions).

Respondent does not acknowledge these findings and conclusions. Nevertheless, they indicate, if not outright assert, that state habeas counsel made reasonable, diligent efforts to discover new mitigation witnesses before withdrawing the IAC claim. Despite this diligent effort, new information has been discovered and presented by federal habeas counsel. Because the CCA has effectively concluded that state habeas counsel was diligent in his original efforts, the CCA may well conclude that the new information collected by federal habeas counsel was "not ascertainable through the exercise of reasonable diligence," thereby satisfying the subsequent-writ exception in section 5(a)(1).

Respondent next takes issue with the Court's conclusion that Busby may be able to proceed in state court under section 5(a)(3) of article 11.071. *Amended Stay and Abeyance Order* at 12. Respondent argues that this exception to the writ bar is equivalent to the federal "actual innocence of the death penalty" exception to exhaustion found in *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). Respondent cites *Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007) for support and argues that the IAC claim would not qualify under section 5(a)(3) because it does not affect Busby's eligibility for the death penalty but only the jury's discretion to impose it. *Objection* at 8. For purposes of this argument, the Court assumes Respondent has correctly characterized Busby's IAC claim as one that pertains only to the jury's discretion to assess

a death sentence and not to Busby's eligibility for a death sentence.

While Respondent correctly defines the limits of the federal exception found in *Sawyer v. Whitley*, the CCA in *Blue* only considered whether section 5(a)(3) could accommodate a claim of mental retardation, which is a death-penalty eligibility claim. *Blue*, 230 S.W.3d at 159. The CCA was not faced with deciding whether section 5(a)(3) could accommodate a claim that would affect only the jury's discretion to assess a death sentence. In fact, the CCA hesitated to declare that section 5(a)(3) wholly codifies *Sawyer v. Whitley* and noted that the text of section 5(a)(3) arguably *allows* a subsequent habeas applicant to demonstrate by clear and convincing evidence that, but for some constitutional error, no rational juror would have answered the mitigation special issue in the state's favor. *See Blue*, 230 S.W.3d at 161 n.42. Thus, whether section 5(a)(3) accommodates such a claim remains an undecided, but arguable, matter of state law. *See Seaton v. Procunier*, 750 F.2d 366, 368 (5th Cir. 1985) ("We will take the word of the highest court on criminal matters of Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law."), *cert. denied*, 474 U.S. (1985).

Respondent also cites *Rocha v. Thaler*, 626 F.3d 815, 838 (5th Cir. 2010) and *Haynes v. Quarterman*, 526 F.3d 189, 196-97 (5th Cir. 2008) to support his assertion that section 5(a)(3) is an

8

independent and adequate state-law bar to Busby's claim. These cases are factually distinguishable, however, because Busby's IAC claim is not, in fact, based on counsel's failure to uncover solely mitigating evidence. A large portion of the IAC claim alleges that counsel overlooked evidence of mental retardation. *Amended Petition*, 78-92. Mental retardation evidence may, of course, affect Busby's eligibility for a death sentence and falls clearly within the realm of section 5(a)(3), as determined in *Rocha*. *See Rocha,* 626 F.3d at 822, 826.

Respondent does not address yet a third possibility: that given the unusual circumstances causing the failure to exhaust in this case and the new information presented in this Court, the CCA would reopen the initial writ and reassess its conclusions regarding the withdrawal of the IAC claim. *See Ex parte Moreno*, 245 S.W.3d 419, 428 (Tex. Crim. App. 2008) (holding that CCA has authority to revisit initial state application under Texas Rule of Appellate Procedure 79.2(d) if there is a compelling reason to believe that it may not have been "correct" on original submission). This would preempt entirely the need for a subsequent-writ analysis under article 11.071, section 5. *E.g., Ex parte Gonzales*, No. WR-70,969-01, 2012 WL 340407 (Tex. Crim. App. Feb. 1, 2012).

In short, Busby has three potential avenues into state court. Whether he will be successful in this regard is not for this Court

to decide.  *See Wilder v. Cockrell*, 274 F.3d 255, 262 (5th Cir. 2001) (holding in pre-*Rhines* case that, where it is not entirely clear that the Texas subsequent-writ bar would prohibit consideration of an unexhausted claim, Texas courts should make that determination).  But the potential for success makes the application of a procedural bar based on the Texas subsequent-writ statute inappropriate, and it also demonstrates that abeyance would not be futile.

## B.  Good Cause

Respondent also contends that there is no "good cause" for abeyance under *Rhines* because the Fifth Circuit has repeatedly held that the ineffective assistance of state habeas counsel cannot serve to excuse a procedural bar.  *Objection* at 4 (citing *Williams*, 602 F.3d at 308-09; *Ruiz v. Quarterman*, 460 F.3d 638, 643-44 (5th Cir. 2006); *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004)). Busby responds that the Court's order is in keeping with the Supreme Court's reasoning in *Maples v. Thomas*, 132 S. Ct. 912 (2012) and *Martinez v. Ryan*, 132 S. Ct. 1309 (2011).  *Response* at 4-5.   These two cases hold that, in some circumstances, the absence, abandonment, or ineffectiveness of initial state habeas counsel can be cause to excuse procedural default in federal habeas court.

While Respondent correctly states the law of this circuit, the argument is inapt.  The Court has not concluded that state habeas

10

counsel was ineffective or abandoned his client, as there is no factual basis to do so.  On the contrary, the state court found that state habeas counsel acted ethically and diligently in attempting to protect his client's rights before withdrawing the IAC claim for lack of merit.  (Supp. SHR 2-3).  The Court has no reason to disregard the findings of the state habeas court.  *See* 28 U.S.C. § 2254(e)(1) (providing that a state court's determination of a factual issue shall be presumed correct).

Furthermore, Respondent's argument assumes that the *Rhines* "good cause" requirement is equivalent to the "cause" required to excuse procedural default.  But neither the Supreme Court nor the Fifth Circuit has articulated a test for good cause for abeyance. *See Baldwin v. Thaler*, No. C-10-188, 2011 WL 744742, at *6 (S.D. Tex. Jan. 27, 2011); *Murphy v. Thaler*, No. 3:10-CV-163-N, 2010 WL 2381500, at *2 (N.D. Tex. June 8, 2010).  The Supreme Court has noted that "a petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file [an unexhausted claim] in federal court." *See Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005) (citing *Rhines v. Weber*).  The use of the liberal "reasonable confusion" language suggests a far broader interpretation than the "cause" required for excusing procedural default.[2]  *See also Ruiz*, 504 F.3d at 529 n.17

---

[2] The "cause" that excuses procedural default ordinarily turns on whether the applicant can show that "some objective factor external to the defense" impeded counsel's efforts to comply with the state's procedural rule. *Moore v. Quarterman*, 533 F.3d 338, 341 (5th Cir. 2008).

11

(noting that the Supreme Court did not intend "good cause" for abeyance to mean "good excuse" in the technical sense, but rather "good cause" in the equitable sense); *Murphy*, 2010 WL 2381500, at *2. *But see Williams*, 602 F.3d at 309 (holding that alleged good cause was inadequate to justify abeyance where it was also inadequate to excuse procedural default). Moreover, such an interpretation is logical, given the different type of relief sought in each circumstance: proving the "cause" required to cast aside an independent and adequate state procedural bar should be more onerous than proving the "good cause" required to leave federal court and pursue state review in the first instance.

The fact remains that additional information has been presented to this Court that was apparently unavailable to state habeas counsel. Although Busby asserts that he lacked the resources necessary to investigate this claim and argue its procedural viability to the Court, he has nevertheless managed to do both.[3] The new information, if true, is highly probative of Busby's IAC claim because it is mitigating, it subverts a finding of future dangerousness by diminishing Busby's role in the crime,

---

[3] Contrary to the implications in Busby's reply, this Court did not deny funding in order to compel Busby to seek reimbursement from the State of Texas. As Busby himself points out, the witness declarations and expert assistance he obtained during these federal proceedings were not funded by this Court because the underlying IAC claim was unexhausted. *Response* at 3-4. The Court also rejected Busby's allegation that state habeas counsel's conflict of interest rendered the IAC claim procedurally viable and, thus, fundable, because Busby omitted the very evidence in the record that undermined this claim. *Order Denying Application for Funds* at 5-8 (doc. 54). The Court also denied Busby's request to develop testimony regarding the alleged conflict because he would not identify the testimony he claimed to have that would prove his allegations. *Order Denying Motion for Leave to Conduct Discovery* at 6 (doc. 50).

and it supports theories that trial counsel presented or attempted to present to the jury. The Court will not speculate as to the possible reasons for the late appearance of this evidence or its veracity, as those matters are best reserved for the state court that first addressed this matter. *See Wilder*, 274 F.3d at 262 (holding that Texas court should make determination under Texas's subsequent-writ bar). It suffices to say that the initial investigation that gave rise to the IAC claim, including the competing affidavits between trial counsel and his own mitigation expert, was conducted in state court. The facts supporting the withdrawal of the claim were also developed in state court and met with the state court's approval. Under these unique circumstances, the existence of new, probative information is good cause for abeyance.

Respondent complains that this Court stayed this case without a request from Busby. Indeed, despite Busby's assertion of his intention to seek a stay and abeyance if the Court rejected his conflict-of-interest allegations against state habeas counsel, Busby has not done so. *See Petitioner's Reply to Respondent's Answer* at 17 n.16, 19 n.17, 54. So it appears that Busby intended to wait until the Court expended the time and resources to fully consider his exhausted and unexhausted claims before requesting a stay and abeyance. *See, e.g., Ruiz v. Thaler*, 783 F. Supp. 905, 914 (W.D. Tex. 2011) (op. on remand) (stating that Ruiz, represented by lawyers previously affiliated with Busby's counsel, sought abeyance only in a series of post-judgment motions); *Rocha*,

13

626 F.3d at 820 (stating that Rocha, represented by Busby's counsel, filed a federal habeas petition which was dismissed on procedural grounds, refiled the claim in state court, which dismissed it on procedural grounds, and then returned to district court to reopen the original judgment). This Court should not waste its limited resources by rendering a judgment on potentially meritorious claims that will be re-filed in state court in a few years. Given the potential merit of the allegations in this case, and this Court's belief that the claims are not plainly barred in state court, a stay and abeyance is the proper course.

Nevertheless, the Court is sensitive to Respondent's concern. Stay and abeyance proceedings are intended to protect inmates from losing federal review of potentially valid claims due their failure to properly pursue state exhaustion. *Rhines*, 544 U.S. at 275. But the intentional filing of allegedly meritorious but unexhausted claims has the potential for abuse as a strategy to unnecessarily extend federal habeas proceedings. This delay is compounded if the state court proceedings are not used to fully exhaust all claims in the case. As such, Busby is directed to present the state court with all factual theories, legal theories, and evidence (including all exhibits filed in this Court) that he wishes this Court to consider when he returns to federal court following the stay.

The Court overrules Respondent's objections to the stay and abeyance. In sum, the Court cannot grant relief on the merits, but the denial of relief on the merits is not supported by the current

14

record and a procedural-bar dismissal based on *Coleman* would not be appropriate since Busby is not clearly barred from litigating the claim in state court. The Court DENIES Respondent's motion to lift the stay.

    SIGNED September 13, 2012.

                                              */s/ Terry R. Means*
                                           TERRY R. MEANS
                                           UNITED STATES DISTRICT JUDGE

TRM/ks:be